***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee-employer relationship existed on November 29, 1999.
2. On April 12, 2000, defendant filed a Form 60 stipulating that plaintiff's average weekly wage was $303.20, yielding a compensation rate of $202.14.
3. Toastmaster, Inc is the self-insured defendant-employer and Corporate Claims Management, Inc. is the third party administrator on the date of the alleged occupational disease.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged occupational disease.
5. The parties agree that the records of John W. Neal, M.D. are admissible into evidence but each side retains the right to depose Dr. Neal.
6. The parties agree that the records of Mark E. Brenner, M.D. are admissible into evidence but each side retains the right to depose Dr. Brenner.
7. The parties stipulate that the reports of Jim Ratliff, MA, CRC are admissible into evidence but each party retains the right to depose Mr. Ratliff.
8. Pursuant to plaintiff's request, defendant has scheduled a follow up medical visit for plaintiff with Dr. Brenner on Thursday, February 8, 2001 at 11:30 a.m. The deposition of Dr. Brenner will take place on February 7, 2001 at 5:45 p.m.
9. The parties agreed to submit a packet of stipulated medical records at the hearing before the Deputy Commissioner.
10. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
11. The Commission has jurisdiction of the parties and all parties have been properly named in this action.
12. The parties stipulate the following documents into evidence:
a. The complete Industrial Commission file.
b. Medical records of John W. Neal, M.D.
c. Medical records of Mark E. Brenner, M.D.
13. Plaintiff has received all workers' compensation benefits to which she is presently entitled. Plaintiff continues to receive temporary total disability benefits at the rate of $202.14 as of the date of the hearing before the Deputy Commissioner.
14. Following development of plaintiff's compensable injury, plaintiff was disabled from February 29, 2000 until April 5, 2000. On April 6, 2000, plaintiff returned to work with defendant-employer at the same or greater average weekly wage as plaintiff had prior to her injury. Plaintiff returned to work with permanent restrictions accommodated by defendant-employer performing the job of Industrial Cleaner.
15. Plaintiff continued to work on a full-time basis as an Industrial Cleaner at the same or greater average weekly wage as plaintiff had prior to her injury from April 7, 2000 until August 25, 2000. On August 25, 2000, plaintiff was laid off by defendant-employer as part of a company-wide layoff where defendant-employer laid off approximately 70% of all employees.
16. Plaintiff has not returned to work since August 25, 2000. Defendant-employer reinstated plaintiff's temporary total disability benefits as of August 26, 2000.
17. The depositions of Dr. Mark E. Brenner and Lisa Beasley are a part of the evidentiary record in this matter.
 ***********
Based upon the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was 50 years old on the date of the hearing before the Deputy Commissioner. Plaintiff has a tenth grade education and was employed by defendant-employer as an assembler. On approximately November 29, 1999, plaintiff developed the compensable occupational disease of bilateral carpal tunnel syndrome. Defendant-employer accepted plaintiff's workers' compensation claim as compensable.
2. Dr. Mark Brenner at Pinehurst Surgical Clinic treated plaintiff and diagnosed her with recurrent carpal tunnel syndrome with associated flexor tenosynovitis on December 28, 1999. Plaintiff's primary complaints concerned her right wrist for which Dr. Brenner recommended a cortisone shot. Dr. Brenner instructed plaintiff to avoid vocational activities that involved repetitive use of plaintiff's upper extremity. According to Dr. Brenner's testimony, he intended this restriction to prevent plaintiff from participating in jobs with production demands that require lengthy periods of repetitive use of the upper extremity.
3. Plaintiff continued to treat with Dr. Brenner who, on April 5, 2000, found the duties of defendant-employer's industrial cleaner job appropriate so long as plaintiff did not participate in strenuous mopping activities and prolonged repetitive window washing. Dr. Brenner restricted plaintiff from repetitive or production related activities with the upper extremities.
4. Plaintiff returned to work as an industrial cleaner on April 7, 2000 and worked full-time as an industrial cleaner until she was laid off as part of a company-wide layoff on August 25, 2000.
5. As an industrial cleaner, plaintiff was required to clean various areas of the plant and was allowed to work at her own pace with limited supervision. Plaintiff's job duties included cleaning, vacuuming, sweeping, mopping, and wiping different surfaces. Plaintiff did not have to perform any of the various job duties for any extended periods of time and was under no production requirements.
6. Plaintiff performed the job of industrial cleaner well. During plaintiff's tenure as an industrial cleaner, Lisa Beasley, Human Resources Coordinator for defendant-employer, received several compliments from other employees regarding the cleanliness of the plant. Before and after plaintiff's tenure as an industrial cleaner, defendant-employer's plant was not kept as clean and complaints were lodged by defendant-employer's employees from time to time.
7. At the hearing before the Deputy Commissioner, plaintiff was questioned as to what she thought she had to offer potential employers and plaintiff's testimony and demeanor indicated a reluctance on the part of plaintiff to answer. Plaintiff stated that she had nothing to offer because of her educational background and indicated she was attending GED classes to improve her employability. However, when questioned about the classes, plaintiff indicated that they were at her own pace and gave no indication when she might complete her coursework. Plaintiff did not appear concerned with when she would complete her GED. Little weight is given to plaintiff's testimony regarding her ability and willingness to work.
8. The industrial cleaner position performed by plaintiff was suitable work available in the marketplace and an essential job position required by defendant-employer. Defendant-employer has always had a janitor or industrial cleaner and currently employs an industrial cleaner. Defendant-employer currently employs only one industrial cleaner due to the layoff reducing the number of employees in the plant. Prior to the company-wide layoff in August 2000, defendant-employer employed plaintiff and one other employee as industrial cleaners.
9. On July 11, 2000, Dr. Brenner's clinical impression of plaintiff's bilateral upper extremities remained basically the same. Dr. Brenner recommended continued light duty vocational activities.
10. Plaintiff returned to Dr. Brenner on August 10, 2000 complaining of increased discomfort in both upper extremities and pain radiating into the neck. Dr. Brenner recommended a left side carpal tunnel injection. On August 14, 2000, Dr. Brenner projected plaintiff's ratings would be 3% to the left and right hands. As of August 14, 2000, plaintiff's restrictions had not changed and included no repetitive pinching, gripping, grasping and production related work with both hands. Dr. Brenner considers these restrictions to be permanent restrictions.
11. Plaintiff returned to Dr. Brenner on February 8, 2001 complaining of significant pain. Dr. Brenner's examination was unremarkable for obvious abnormalities. Dr. Brenner restricted plaintiff from driving more than 25 miles. As of February 8, 2001, plaintiff's permanent restrictions remained. Dr. Brenner increased plaintiff's permanent impairment ratings of both the right and left hands to 5% each.
12. Dr. Brenner testified by deposition on March 19, 2000 that plaintiff continues to be able to perform the industrial cleaner position or similar housekeeping duties which are not considered by him to be repetitive in nature.
13. Dr. Brenner encourages patients with repetitive motion restrictions to perform exactly the kind of activity of the industrial cleaner job. For example, vacuuming for thirty minutes or an hour and then performing another activity for thirty minutes does not violate plaintiff's restrictions.
14. Vocational rehabilitation has been ongoing at the direction of rehabilitation consultant Jim Ratliff since his first meeting with plaintiff on December 7, 2000. Mr. Ratliff testified at the hearing before the Deputy Commissioner that several jobs that take into account both physical and vocational limitations were available within a reasonable distance from plaintiff's residence and that plaintiff was capable of obtaining one of these jobs. According to Mr. Ratliff, plaintiff was employable in a housekeeping capacity with other employers or in other jobs not involving repetitive motion.
15. Stephen Carpenter, a rehabilitation counselor/consultant and medical exercise specialist employed by plaintiff for evaluation, issued a report dated November 3, 2000 concluding that plaintiff's vocational prognosis is "only fair". Mr. Carpenter has not contacted any employers and has not conducted any significant investigation into the labor market regarding plaintiff returning to work in a capacity similar to the industrial cleaner capacity.
16. Mr. Carpenter testified at the hearing before the Deputy Commissioner that plaintiff is not employable. This testimony is contrary to the greater weight of the evidence of record including the conclusions made by Mr. Carpenter in his November 3, 2000 report where he determined plaintiff to be a "fair" vocational candidate.
17. Greater weight is afforded to the opinions of Dr. Brenner and Mr. Ratliff with regard to plaintiff's ability to return to work in the industrial cleaner position or a job with similar duties.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to meet her burden of proving that she is permanently and totally disabled. N.C. Gen. Stat. § 97-29.
2. Plaintiff would benefit from and is entitled to vocational rehabilitation services to be provided by Jim Ratliff or another qualified rehabilitation professional as governed by the Workers' Compensation Act and the North Carolina Industrial Commission Rules for the Utilization of Rehabilitation Professionals in Workers' Compensation Claims. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim that she is permanently and totally disabled is hereby DENIED.
2. Plaintiff's request that defendant be ordered to cease vocational rehabilitation is hereby DENIED.
Furthermore, plaintiff is hereby ordered to comply with vocational rehabilitation services.
4. Furthermore, an expedited hearing shall be held before Deputy Commissioner Hall concerning the Order filed October 17, 2001 approving the Form 24 Application.
This the ___ day of May 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN